**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARGOT CARRINGTON, individually, on behalf of others similarly situated<br>U.S. Embassy Tokyo, Unit 9800 Box 300<br>DPO, AP 96303-0300<br><br>                Plaintiff,<br><br>   vs.<br><br>JOHN J. SULLIVAN, in his official capacity as Acting Secretary, United States Department of State<br>The Executive Office<br>Office of the Legal Adviser, Room 5519<br>United States Department of State<br>2201 C Street, NW<br>Washington, DC 20520-6310;<br><br>                Defendant. | Civil Action No.:  _____<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

## I.      INTRODUCTION

1.      This class action lawsuit brought by Representative Plaintiff Margot Carrington ("Plaintiff" or "Carrington"), on her own behalf and on behalf of the proposed Class identified below, challenges the inflexible hardship post requirement for promotion to the Senior Foreign Service ("SFS"), as maintained by the U.S. Department of State ("DOS") in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.* ("Rehabilitation Act").

2.      The United States Foreign Service, a branch of DOS, works through its Foreign Service Officers ("FSOs") to advocate American foreign policy, protect American citizens, and promote American interests throughout the world.

3.      FSOs perform traditional diplomatic responsibilities, including trade promotion, political and economic reporting, and consular services and protection.

4.      Moreover, like any federal agency, DOS is obligated to serve as a model employer for individuals with disabilities. 29 C.F.R. § 1614.203(c).

5.      Moreover, DOS, like any federal agency, is required to structure its procedures and programs so as to ensure that qualified individuals with disabilities are afforded equal opportunity in job promotion.

6.      The Foreign Service Act of 1980, 22 U.S.C. §§ 3901 *et seq.* specifically incorporates the Rehabilitation Act (22 U.S.C. § 3905(e)(4)) and parallel civil service protections for individuals with disabilities (22 U.S.C. §§ 3902(8), 3905(a)-(b)).

7.      DOS is required to "foster[] the development and vigorous implementation of policies and procedures, including affirmative action programs, which will facilitate and encourage … advancement in the Foreign Service by persons from all segments of American society, and … equal opportunity and fair and equitable treatment for all without regard to … handicapping condition…." 22 U.S.C. § 3901(b)(2).

1

CLASS ACTION COMPLAINT

## II.   PROMOTION FROM FOREIGN SERVICE TO SENIOR FOREIGN SERVICE

8.     To be promoted to the SFS, DOS requires FSOs to, among other requirements, to serve in one of its foreign posts which it designates as a "hardship post" with a sufficiently high "hardship differential."

9.     DOS designates certain foreign posts as hardship posts "where environmental conditions differ substantially from environmental conditions in the continental United States and warrant additional compensation as a recruitment and retention incentive." 3 FAM 3261.1.

10.    Hardship post differential is the percent of additional compensation a FSO receives over her basic compensation for service at foreign posts where conditions are substantially different from the United States, such as the quality of available medical facilities, the level of pollution in the area, and other factors that make life difficult for employees living in such foreign posts. *See* U.S. Department of State, Office of Allowances, "Frequently Asked Questions Post Hardship Differential," *available at*:

https://aoprals.state.gov/content.asp?content_id=175&menu_id=75#01 (last visited Apr. 10, 2018)

11.    DOS places the full burden of meeting the hardship post requirement for promotion to the SFS on FSOs, informing them that FSOs have an obligation to manage their careers so as to meet the hardship service requirement while providing no meaningful assistance to meet this onerous make-or-break requirement.

12.    In 2017, DOS increased the hardship post differential requirement to 25%. The increased requirement was implemented over the vigorous opposition of the American Foreign Service Association ("AFSA"), the exclusive bargaining agent for Foreign Service employees, including FSOs.

## III.   THE PARTIES

13.    Representative Plaintiff Carrington is a FSO with rank FS-01. Plaintiff Carrington currently resides in Tokyo. At all times relevant to this Complaint, Plaintiff had an immunological

disorder, a record of an immunological disorder, and was perceived by DOS as an individual who had an immunological disorder.

14.     Plaintiff's immunological disorder is a physical impairment which constitutes a "disability" under the Rehabilitation Act because it, at times, substantially limits the functioning of one or more of her major organ systems, causing fatigue, rashes, headaches, and digestive dysfunction if left untreated. *See* 29 C.F.R. § 1630.2(h)(1) (definition of "physical … impairment"), j(3)(iii) ("Predictable assessments"). Plaintiff has never been hospitalized as a result of her disability.

15.     At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability under the Rehabilitation Act.

16.     Defendant John J. Sullivan is the acting United States Secretary of State. He is sued in his official capacity.

## IV.     JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 794a(a)(1), as this case is brought under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, for violations of 29 U.S.C. § 791(f).

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because DOS is located in this District and a substantial part of the events giving rise to the claims set forth herein occurred in this District.

## V.     DOS DENIED PLAINTIFF CARRINGTON PROMOTION TO THE SENIOR FOREIGN SERVICE SOLELY BECAUSE OF DISABILITY.

19.     Plaintiff Carrington attempted to satisfy the hardship post requirement over the years, including in 2010 when she requested assignment to New Delhi (20% differential[1] in February 2010), Accra (20% differential in February 2010), and Hanoi (25% in February 2010).

---

[1] DOS's hardship post differential tables, including an archive of rates from previous years, are available online at https://aoprals.state.gov/Web920/hardship.asp (last visited Apr. 11, 2018).

3

20.     DOS chose not to assign Plaintiff Carrington to any hardship posts in 2010, or at any other time when Plaintiff Carrington sought assignment to a post with a sufficiently high hardship differential for promotion to the SFS.

21.     In early 2014, a DOS employee within the Bureau of East Asian and Pacific Affairs requested that Plaintiff Carrington serve as Minister Counselor of the Public Affairs Section of Embassy Tokyo due to the "needs of the service."

22.     Minister Counselor is a type of diplomatic rank – recognized by countries around the world – and also a type of personnel classification in the SFS. See 22 U.S.C. § 3942(a). A FSO may be permitted to temporarily serve as a Minister Counselor with respect to the diplomatic and international recognition of such diplomatic rank, based on the needs of DOS. This type of assignment is called a "stretch" assignment if the difference between a FSO's personal rank (based on DOS's personnel classification system) is one grade lower than the diplomatic rank in which they temporarily serve. If the difference between a FSO's personal rank is two grade lower than the diplomatic rank in which they temporarily serve, then such assignment is referred to as a "double stretch" assignment.

23.     Plaintiff Carrington's personal rank as a FSO is FS-01, the highest rank a FSO generally can achieve until and unless he or she is either promoted to the SFS or terminated for not receiving a promotion within a set period of time. *See* 3 FAM 6213.3.

24.     In August 2014, Plaintiff Carrington arrived at Embassy Tokyo to serve in her double stretch assignment as Minister Counselor.

25.     Within months, Plaintiff Carrington helped address many of the issues plaguing that particular post's public affairs section, as documented by DOS's Office of Inspector General in an August 2015 report, available at https://oig.state.gov/system/files/isp-i-15-35a.pdf ("The Ambassador selected the country public affairs officer [Margot Carrington], who arrived in Tokyo in August 2014, to stabilize the public affairs section, end the curtailments, define LE staff duties in order to clarify the new distribution of duties following the 2012 staff cuts, bring transparency to personnel decisions, and get the entire staff's commitment to move forward. Since the public

4

affairs officer's arrival, the public affairs section has had considerable success, particularly with programs on educational exchange and women's issues.").

26.     Throughout her career as a FSO, Plaintiff Carrington has received numerous meritorious awards in recognition of her excellent work performance on behalf DOS and the American people.

27.     In Plaintiff Carrington's 2016 performance evaluation, the deputy chief of mission providing her evaluation found that Plaintiff Carrington "is an extraordinarily capable and dedicated oficer [sic] and an asset to this mission. If she were in the senior ranks, where she clearly belongs, these achievements would warrant merit pay. I urge the panels to promote her without delay."

28.     Most recently, Plaintiff Carrington received a meritorious service pay increase, with the nominating official describing her as "one of our best assets" who "should be recognized for her considerable contributions to enhance the image of the United States in Japan." The written justification for Plaintiff Carrington's meritorious service pay increase also noted that she "has set an exceedingly high bar for performance as Minister-Counselor for Public Affairs at one of [DOS's] busiest posts in [the East Asian Pacific region], and more than deserves recognition…."

29.     In early 2015, Plaintiff Carrington requested that her assigned Career Development Officer ("CDO") initiate the process of being considered for promotion to the SFS.

30.     After reviewing Plaintiff Carrington's service record, Plaintiff Carrington's CDO informed her that she met all requirements for promotional eligibility to the SFS other than the then-current hardship post requirement, and only that requirement, for promotion to the SFS.

31.     Shortly thereafter, Plaintiff Carrington's CDO directed her to withdraw her application for promotion, which Plaintiff Carrington did.

32.     As a result, on April 18, 2015, DOS's human resources bureau ("HR") informed Plaintiff Carrington that HR would terminate the process by which Plaintiff Carrington was to be nominated for promotional consideration to the SFS.

CLASS ACTION COMPLAINT

33.     Nonetheless, on October 5, 2015, Plaintiff Carrington's CDO informed her that she was promoted to the SFS. A diplomatic cable had also been issued throughout DOS, announcing Plaintiff Carrington's promotion (along with the other FSO promotions) to all of her long-time colleagues.

34.     Two days later, HR informed Ms. Carrington that DOS's HR had committed a "threshold review error," by erroneously processing her application for promotional consideration to the SFS.

35.     Consequently, DOS rescinded Ms. Carrington's promotion to the SFS.

36.     On October 13, 2015, Plaintiff Carrington wrote to the Director General of the Foreign Service ("DG"), requesting a waiver of the hardship post requirement for entry into the SFS.

37.     Four days later, the DG responded that Plaintiff Carrington must satisfy the hardship post requirement and declined to grant a waiver.

38.     On February 2, 2016, DOS Director of Medical Clearances, Dr. Ernest E. Davis, opined that Plaintiff Carrington's disability "severely limit[s] assignment of the employee … to posts without sophisticated, near CONUS [continental United States] equivalent medical resources. The required medical resources would not be available in hardship posts."

39.     Plaintiff Carrington worked with her CDO to again request a waiver from the DG.

40.     The DG denied Plaintiff Carrington's second request for a waiver on April 22, 2016. In so doing, the DG directed Plaintiff Carrington to "request that MED evaluate possible posts for post-specific clearance" and "[i]f [DOS's medical bureau] is not able to clear you for any 15 percent differential posts at this point, you may wish to request consideration of a waiver," despite DOS's Director of Medical Clearances' opinion that Plaintiff Carrington is medically precluded from serving in such posts.

41.     Plaintiff Carrington requested a waiver of the hardship post requirement for promotion to the SFS as a form of reasonable accommodation in March 2016. The waiver request

was directed to the Disability and Reasonable Accommodation Division within DOS's Office of Accessibility and Accommodation ("DRAD").

42.     On April 1, 2016, DRAD Senior Policy Advisor Shayna Steinger wrote, "a [hardship post requirement] waiver is not considered a reasonable accommodation, therefore, while we can certainly communicate with you, as needed, but [sic] there is no need for you to provide us with a DS-5053 Request for Disability [accommodation form]."

43.     As a regular practice and policy, DRAD, does not consider waiving the hardship post requirement for promotion to the SFS for FSOs with disabilities.

44.     The only Foreign Service official authorized to grant a waiver of the hardship post requirement is the Director General of the Foreign Service.

45.     In deciding whether to grant a waiver of the hardship post requirement for promotion to the SFS, the DG does not consider reasonable accommodation.

46.     Upon information and belief, waiving the hardship post requirement for promotion to the SFS for FSOs with disabilities would not pose an undue hardship for DOS. For example, in 2014, DOS identified only 75 out of 26,363 employees as individuals with targeted disabilities. ("Targeted disability" refers to these types of disabilities: deafness; blindness; missing extremities; partial paralysis; complete paralysis; convulsive disorders; intellectual disability; mental illness; and distortion of limb and/or spine).

## VI.     DOS'S HARDSHIP POST REQUIREMENT HAS A DISPARATE IMPACT ON INDIVIDUALS WITH DISABILITIES.

47.     According to AFSA, the 2017 increase to the hardship post differential needed for an FSO to be eligible for promotion to the SFS will result in "an adverse impact on many Foreign Service employees who will not be able to meet the requirements due to the lack of available positions and their own … personal situations" including "those with medical concerns." AFSA Statement.

CLASS ACTION COMPLAINT

48.     Upon information and belief, DOS's inflexible hardship post requirement for promotion to the SFS disproportionately excludes FSOs with disabilities from promotional opportunities to the SFS.

## VII.    INFLEXIBLE HARDSHIP POST SERVICE IS NOT CONSISTENT WITH LEGITIMATE GOVERNMENTAL NEED.

49.     The Foreign Service Act of 1980, 22 U.S.C. §§ 3901 *et seq*. does not create a statutory requirement for 15% or 25% hardship differential post service for promotion to the SFS.

50.     Serving in a hardship post is not one of the specified factors which Foreign Service selection boards for promotion must consider in recommending FSOs for promotion to the SFS. *See* 22 U.S.C. § 4003(a)-(b).

51.     DOS's hardship post requirement for promotion to the SFS first went into effect in 2005.

52.     The Director General retains the sole authority to waive the hardship post requirement for promotion to the SFS.

53.     Neither the pre-2017 inflexible hardship post requirement nor the 2017 increase to the inflexible hardship post differential required for promotion to the Senior Foreign Service – ostensibly to increase FSO service in inhospitable foreign posts – is warranted by any legitimate governmental need.

54.     DOS's own data shows that foreign posts with hardship differentials of between 0% to 15% have a higher vacancy rate than foreign posts with 20% or higher differentials, *i.e.*, FSOs already tend to serve in the most inhospitable posts more frequently than they serve in less inhospitable posts.

55.     As AFSA observes:

The Department's [2017] changes to the [hardship post policy] will further complicate bidding simply because there are not enough hardship positions to meet demand. There is no guarantee that talented FSOs, who have to this point progressed quickly through the ranks, will be able to meet these additional requirements to enter the Senior Foreign Service within the prescribed time frame. Those FSOs unable to meet these new requirements—

8

CLASS ACTION COMPLAINT

and, given the scarcity of positions available, that will be many FS-01s—will not be allowed to open their windows unless they can convince HR to grant them a waiver.

AFSA Statement.

56.    DOS's explanation for increasing the hardship post requirement from 15% to 25% has shifted twice.

57.    First, DOS inaccurately claimed that the increased differential was necessary to fill vacant positions at high differential posts. Next, DOS claimed that were insufficient and low-performing FSOs seeking assignment in particular hardship posts in Africa and South Central Asia. When AFSA demonstrated that this proffered explanation did not warrant an increase in the differential necessary to satisfy the hardship post requirement, DOS asserted that FSOs needed to serve in high hardship differential posts to build leadership skills.

58.    None of DOS's shifting explanations justify maintaining the inflexible hardship post requirement, which screens out or tends to screen out FSOs with disabilities from promotion to the SFS.

## VIII.   CLASS ACTION ALLEGATIONS

59.    During the Class Period, DOS refused to consider waiver of the hardship post requirement for entry into the SFS as a form of reasonable accommodation. DOS's inflexible hardship post requirement for entry into the SFS disparately impacts FSOs with disabilities. Plaintiff Carrington seeks relief for the proposed Class pursuant to the Rehabilitation Act.

60.    Plaintiff brings this action as a class action pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure ("FRCP") on behalf of the following defined Class, challenging DOS's failure to promote FSOs with disabilities to the Senior Foreign Service, including via the hardship post requirement, as violative of the Rehabilitation Act:

**Proposed Class:** all Foreign Service Officers who: (1) had a disability, as defined in the Rehabilitation Act of 1973; (2) held the rank of FS-01; and (3) were not promoted into the SFS from October 3, 2015 to the final disposition of this case.

9

61.     <u>Numerosity</u>:  The proposed Class is so numerous that joinder of all members is impracticable.

62.     According to DOS's publicly available data, 152 DOS employees filed EEO complaints from January 1, 2015 through September 30, 2017, alleging disability discrimination. *See* https://www.state.gov/s/ocr/275437.htm (last visited Apr. 11, 2018).

63.     From January 1, 2015 through September 30, 2017, 39 DOS employees filed EEO complaints regarding denials of reasonable accommodations. *Id*.

64.     From January 1, 2015 through September 30, 2017, 75 DOS employees filed EEO complaints regarding promotion/non-selection issues. *Id*.

65.     According to DOS's publicly available data, as of December 31, 2017, DOS employs 13,676 FSOs.  *See*  https://www.state.gov/documents/organization/277773.pdf  (last visited Apr. 3, 2018). Thousands of these FSOs serve around the world.

66.     Because there are thousands of FSOs employed by DOS, dozens of whom took the reputational risk of filing disability discrimination EEO complaints during most of the Class Period, Plaintiff believes, and on that basis alleges, that during the relevant time period, there are at least scores of individuals who are geographically dispersed around the country and the world and who satisfy the definition of the proposed Class. Moreover, Plaintiff anticipates that the proposed Class will grow over time because DOS continues to not consider waiver of the hardship post requirement for promotion to the SFS as a form of reasonable accommodation despite the 2017 changes, causing a disparate impact on FSOs with disabilities.

67.     <u>Typicality</u>:  Plaintiff's claims are typical of the members of the proposed Class.

68.     Plaintiff is a FSO with a disability who was initially dissuaded from requesting consideration for promotion to the SFS by DOS in April 2015.

69.     After DOS nevertheless processed Plaintiff's request, publicly promoted Plaintiff to the SFS, and thereafter withdrew Plaintiff's promotion to the SFS solely due to the hardship post requirement, Plaintiff repeatedly requested and was denied waiver of the hardship post requirement for promotion to the SFS as a form of reasonable accommodation available under the

10

Rehabilitation Act. Because DOS failed to consider or provide such waiver, Plaintiff ultimately was forced to seek retirement from the Foreign Service in 2018 due to DOS's up-or-out system.

70.     Superiority:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of applicants for employment, where individuals lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large governmental defendant, and fear retaliation, blackballing, and injury to their "corridor reputation." Prosecuting dozens of identical individual lawsuits across the country on behalf of individuals dispersed around the world does not promote judicial efficiency, equity, or consistency in judicial results, when there is a single pattern, practice, and/or policy being challenged: DOS's inflexible hardship post requirement for promotion to the SFS, which disparately impacts FSOs with disabilities.

71.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the proposed Class, has no conflicts with the proposed Class's interests, and has retained counsel experienced in complex class litigation against governmental employers, including class disability discrimination litigation against DOS relating to the Foreign Service.

72.     Commonality:  Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions solely affecting individual members of the proposed Class, including but not limited to:

> A.     Whether DOS fails to consider waiver of the hardship post requirement as a form of reasonable accommodation available under the Rehabilitation Act of 1973;
>
> B.     Whether DOS's failure to consider waiver of the hardship post requirement for promotion to the SFS as a form of reasonable accommodation violates Section 501 of the Rehabilitation Act of 1973;
>
> C.     Whether DOS's failure to consider waiver of the hardship post requirement for promotion to the SFS as a form of reasonable accommodation disproportionately excludes FSOs with disabilities from the SFS;

11

D. Whether DOS has a legitimate governmental need to maintain an inflexible hardship post requirement for promotion to the SFS for FSOs with disabilities without consideration of reasonable accommodation;

E. Whether waiving the hardship post requirement for promotion to the SFS for FSOs with disabilities would pose an undue hardship;

F. Whether there are less discriminatory alternative methods to achieve DOS's proffered governmental need to maintain the hardship post requirement for promotion to the SFS;

G. The appropriate injunctive relief to prevent prospective harm to Plaintiff Carrington and those similarly situated;

H. The proper measure of damages sustained by the proposed Class.

73. This case is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because DOS has acted or refused to act on grounds that apply generally to the proposed Class, including but not limited to maintaining a uniform pattern, practice, and/or policy of requiring FSOs with disabilities to serve in hardship posts to be eligible for promotion to the SFS and failing to consider waiver of this requirement as a form of reasonable accommodation, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed Class as a whole.

74. Class certification is also appropriate under Federal Rule of Civil Procedure Rule 23(b)(3) because questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. DOS's uniformly inflexible hardship post requirement for promotion to the SFS has stymied and ended FSOs' careers and caused FSOs emotional harm. The damages suffered by the individual proposed Class members are small compared to the expense and burden of individual prosecution of this litigation. Proposed Class members fear workplace retaliation, damage to their "corridor reputations" within the Foreign Service, and/or blackballing from obtaining future employment.

12

In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about DOS's failure to promote FSOs with disabilities to the SFS, including via its inflexible hardship post requirement for promotion to the SFS.

75.   Class certification may also be maintained under Federal Rule of Civil Procedure Rule 23(c)(4) because resolving the question of whether DOS's inflexible hardship post requirement for promotion to the SFS disparately impacts FSOs with disabilities can be established with common proof using, for example, statistics, statements from DOS officials, and representative testimony and documents from class members.

76.   Certification pursuant to Federal Rule of Civil Procedure 23(c)(4) is also warranted with respect to the issues of whether DOS intentionally excludes FSOs with disabilities from promotions to the SFS, and fails to consider reasonable accommodations for FSOs with disabilities in the process for promotions to the SFS, among other matters which would benefit from uniform adjudication on behalf of all members of the proposed Class.

77.   Plaintiff Carrington intends to send notice to all members of the proposed Class to the extent required by Rule 23. The names, email addresses, and mailing addresses of the members of the proposed Class are available from DOS because class members are current and former DOS employees.

## IX.   EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING

78.   A federal employee seeking to assert a Rehabilitation Act claim in federal court must exhaust her or her administrative remedies, either with an individual complaint (29 C.F.R. § 1614.106) or a class complaint (29 C.F.R. § 1614.204).

79.   "[A]t any reasonable point in the process when it becomes apparent that there are class implications to the claim raised in an individual complaint," a plaintiff who initially filed a complaint to remedy individual discrimination may "move for class certification." MD-110, Ch. 8, § II.A. "'[M]ove' in this context means that the complainant must make his/her intention to process the complaint as a class action clear. A complainant may make his/her intention clear

through a letter, a formal motion, or any means that effectively informs the agency or Administrative Judge of the complainant's intent to pursue a class action." *Id.* at n. 1.

80.     "A complainant who has filed an individual complaint [or] an agent who has filed a class complaint … is authorized under … the Rehabilitation Act to file a civil action in an appropriate United States District Court … [a]fter 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken." 29 C.F.R. § 1614.407(b).

81.     On November 17, 2015, Plaintiff Carrington timely contacted an EEO counselor.

82.     On January 15, 2016, Plaintiff Carrington timely filed her formal complaint.

83.     In September 2016, DOS requested that Plaintiff Carrington participate in mediation.

84.     From November 2016 to March 2017, Plaintiff Carrington participated in mediation with DOS. Mediation was ultimately unsuccessful.

85.     From the time mediation ended in March 2017 to June 9, 2017, Plaintiff Carrington further investigated whether there was a sufficient basis for proceeding with her claims on behalf of a class of similarly situated employees.

86.     On June 9, 2017, Plaintiff Carrington timely exhausted her class administrative remedies by making her intention known to DOS that she wished her complaint to be processed as a class action via a letter sent to DOS's Office of Civil Rights and the Equal Employment Opportunity Commission.

87.     More than 180 days have elapsed since Plaintiff Carrington moved for class certification on June 9, 2017.

88.     No final action has been taken with respect to Plaintiff Carrington's administrative class action complaint alleging violations of the Rehabilitation Act.

89.     No appeal has been filed with respect to Plaintiff Carrington's administrative class action complaint alleging violations of the Rehabilitation Act.

14

CLASS ACTION COMPLAINT

90.     Accordingly, Plaintiff Carrington's has timely exhausted her administrative remedies under the Rehabilitation Act. *See* 29 C.F.R. § 1614.407(b).

**FIRST CLAIM FOR RELIEF**
**Violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791**
**Disability Discrimination**
**(Failure to Accommodate)**

91.     Plaintiff Carrington, on behalf of herself and the proposed Class, alleges and incorporates by reference the allegations in the preceding paragraphs.

92.     The standards for a violation of the provisions of the Rehabilitation Act of 1973 are the same as those under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* ("ADA").

93.     The ADA, in relevant part, prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, *advancement*, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emph. added).

94.     The ADA, in relevant part, defines "discriminat[ion] against a qualified individual on the basis of disability" as "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an … employee, unless such covered entity can demonstrate that the accommodation would impose an undue burden on the operation of the business of such covered entity…." *Id*. at § 12112(b)(5)(A).

95.     Plaintiff Carrington and each member of the proposed Class is a "qualified individual" with a "disability" within the meaning of the Rehabilitation Act.

96.     DOS has never informed Plaintiff Carrington that DOS disputes her status as an individual with a disability.

97.     DOS's Office of Medical Services issued Plaintiff Carrington a Class 2 medical clearance, because DOS considers Plaintiff Carrington an individual who has "a ***medical*** condition that would pose a significant risk to the health or safety of the individual or others if the individual were assigned to work at one or more posts abroad." 16 FAM 211.2 (emph. in original).

15

98.     DOS deemed Plaintiff Carrington and each member of the proposed Class ineligible for promotion to the Senior Foreign Service without consideration of reasonable accommodation.

99.     Upon information and belief, consideration of reasonable accommodation for FSOs with disabilities with respect to the hardship post requirement for promotion to the SFS would not pose an undue hardship to DOS.

100.    DOS is an "employer" within the meaning of the Rehabilitation Act of 1973.

101.    As a direct, legal and proximate result of DOS's inflexible hardship post requirement, Plaintiff Carrington and the proposed Class have lost career opportunities and damages in an amount to be proven at trial.

102.    Pursuant to the Rehabilitation Act, 29 U.S.C. § 794a, and as a result of DOS's discriminatory conduct, Plaintiff and the proposed Class suffered economic and non-economic harm and are entitled to recover damages for such harm, attorneys' fees, legal costs, and expert witness fees.

103.    Plaintiff Carrington timely exhausted class administrative remedies.

**SECOND CLAIM FOR RELIEF**
**Violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791**
**Disability Discrimination**
**(Disparate Impact)**

104.    Plaintiff Carrington, on behalf of herself and the proposed Class, alleges and incorporates by reference the allegations in the preceding paragraphs.

105.    The standards for a violation of the provisions of the Rehabilitation Act of 1973 are the same as those under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* ("ADA").

106.    The ADA, in relevant part, prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, *advancement*, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emph. added).

16

107.     The ADA, in relevant part, defines "discriminat[ion] against a qualified individual on the basis of disability" as "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an … employee, unless such covered entity can demonstrate that the accommodation would impose an undue burden on the operation of the business of such covered entity…."

108.     The ADA, in relevant part, further defines discrimination against a qualified individual on the basis of disability as "utilizing standards, criteria, or methods of administration … that have the effect of discrimination on the basis of disability; or that perpetuate the discrimination of others who are subject to common administrative control…." *Id.* at § 12112(b)(3)(A)-(B).

109.     The ADA, in relevant part, further defines discrimination against a qualified individual on the basis of disability as "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity…."

110.     Plaintiff Carrington and each member of the proposed Class is a "qualified individual" with a "disability" within the meaning of the Rehabilitation Act.

111.     DOS has never informed Plaintiff Carrington that DOS disputes her status as an individual with a disability.

112.     DOS's Office of Medical Services issued Plaintiff Carrington a Class 2 medical clearance, because DOS considers Plaintiff Carrington an individual who has "a ***medical*** condition that would pose a significant risk to the health or safety of the individual or others if the individual were assigned to work at one or more posts abroad." 16 FAM 211.2 (emph. in original).

113.     DOS is an "employer" within the meaning of the Rehabilitation Act of 1973.

17

CLASS ACTION COMPLAINT

114.    DOS's inflexible hardship post requirement for promotion to the SFS disparately impacts qualified FSOs with disabilities because it disproportionately causes the exclusion or delayed promotion of such FSOs from promotion to the SFS.

115.    DOS has not established a legitimate government need to maintain the inflexible hardship post requirement for promotion to the SFS as to FSOs with disabilities.

116.    Plaintiff Carrington and the proposed Class members have lost career opportunities and damages in an amount to be proven at trial.

117.    Pursuant to the Rehabilitation Act, 29 U.S.C. § 794a, and as a result of DOS's discriminatory conduct, Plaintiff and the proposed Class suffered economic and non-economic harm and are entitled to recover damages for such harm, attorneys' fees, legal costs, and expert witness fees.

118.    Plaintiff Carrington timely exhausted class administrative remedies.

### THIRD CLAIM FOR RELIEF
### Violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791
### Disability Discrimination
### (Disparate Treatment)

119.    Plaintiff Carrington, on behalf of herself and the proposed Class, alleges and incorporates by reference the allegations in the preceding paragraphs.

120.    The standards for a violation of the provisions of the Rehabilitation Act of 1973 are the same as those under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* ("ADA").

121.    Plaintiff Carrington and each member of the proposed Class is a "qualified individual" with a "disability" within the meaning of the Rehabilitation Act.

122.    DOS has never informed Plaintiff Carrington that DOS disputes her status as an individual with a disability.

123.    DOS's Office of Medical Services issued Plaintiff Carrington a Class 2 medical clearance, because DOS considers Plaintiff Carrington an individual who has "a ***medical*** condition

18

that would pose a significant risk to the health or safety of the individual or others if the individual were assigned to work at one or more posts abroad." 16 FAM 211.2 (emph. in original).

124.    DOS deemed Plaintiff Carrington and each member of the proposed Class ineligible for promotion to the Senior Foreign Service without consideration of reasonable accommodation.

125.    As a result, DOS intentionally excluded or delayed Plaintiff Carrington and each member of the proposed Class from promotion to the Senior Foreign Service.

126.    DOS is an "employer" within the meaning of the Rehabilitation Act of 1973.

127.    As a direct, legal and proximate result of DOS's inflexible hardship post requirement, Plaintiff Carrington and the proposed Class members have lost career opportunities and damages in an amount to be proven at trial.

128.    Upon information and belief, consideration of reasonable accommodation for FSOs with disabilities with respect to the hardship post requirement for promotion to the SFS would not pose an undue hardship to DOS.

129.    Pursuant to the Rehabilitation Act, 29 U.S.C. § 794a, and as a result of DOS's discriminatory conduct, Plaintiff and the proposed Class suffered economic and non-economic harm and are entitled to recover damages for such harm, attorneys' fees, legal costs, and expert witness fees.

130.    Plaintiff Carrington timely exhausted class administrative remedies.

## **PRAYER FOR RELIEF**

131.    WHEREFORE, Plaintiff Carrington, on behalf of herself and all members of the proposed Class, prays for relief as follows:

A.    That the Court determine that this action may proceed as a class action under Rule 23(b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure;

B.    That the Court certify one or more liability class(s) and thereafter permit individualized damages proceedings;

CLASS ACTION COMPLAINT

Case 1:18-cv-00880   Document 1   Filed 04/13/18   Page 21 of 22


C.      Programmatic relief requiring DOS to modify the hardship post requirement such that FSOs with disabilities are not disproportionately excluded from promotion to the Senior Foreign Service;

D.      Compensatory damages, including emotional distress damages and lost wages and benefits, where applicable;

E.      Interest on judgment, including pre-judgment interest, to the extent permitted by law;

F.      Attorneys' fees and legal costs;

G.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Carrington, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

DATED:  April 13, 2018          By:

            /s/ Bryan J. Schwartz
Bryan J. Schwartz (DC Bar No. 482960)
Eduard R. Meleshinsky* (CA SBN 300547)
BRYAN SCHWARTZ LAW
Email: bryan@bryanschwartzlaw.com
          eduard@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

Raymond C. Fay (DC Bar No. 188649)
FAY LAW GROUP PLLC
Email: rfay@faylawdc.com
1250 Connecticut Ave, NW Suite 200
Washington DC 20036
Telephone: (202) 263-4604
Facsimile: (202) 261-3508

*Attorneys for Plaintiff Carrington and the Putative Class*

CLASS ACTION COMPLAINT

*Pro Hac Vice application forthcoming*

21