**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARGOT CARRINGTON,<br>*individually, on behalf of*<br>*others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL R. POMPEO,<br>*in his official capacity as*<br>*Secretary, United States*<br>*Department of State*,<br><br>Defendant. | Civil Action No. 18-0880 (ABJ) |

**MEMORANDUM OPINION**

Plaintiff Margot Carrington is an officer in the United States Foreign Service. She has brought this action on her own behalf and on behalf of a putative class of other disabled Foreign Service Officers ("FSOs") against Michael R. Pompeo in his official capacity as Secretary of the United States Department of State (the "Department"). The complaint contains three counts; it alleges that: 1) the Department violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.*, ("Rehabilitation Act" or "Act") by failing to grant reasonable accommodations to plaintiff and other disabled FSOs seeking promotions to the Senior Foreign Service ("SFS"); 2) the Department's "inflexible" hardship post requirement has a disproportionate negative impact on disabled employees including the plaintiff, and therefore it violates the Act; and 3) plaintiff and other disabled employees were subjected to disparate treatment by the Department as a result of its hardship post requirement. *See generally* Am. Compl. [Dkt. # 16]. Defendant has moved to dismiss the complaint for failure to state a claim and lack of subject matter jurisdiction. Def.'s

Mot. to Dismiss [Dkt. # 20] ("Def.'s Mot."); Def.'s Mem. in Supp. of Def.'s Mot. [Dkt. # 20] ("Def.'s Mem."). Because the Court finds that plaintiff has failed to state a claim as to each count, defendant's motion to dismiss is granted.

## BACKGROUND

### I. Factual Background

The following relevant facts are alleged in the amended complaint, except where noted. Plaintiff joined the Foreign Service in January 1993 and eventually achieved a rank of FS-01 as an FSO. Am. Compl. ¶ 15. FS-01 is the highest rank an FSO can ordinarily achieve before she is promoted to the Senior Foreign Service ("SFS") or terminated for failing to receive that promotion within a particular period of time. *Id*. ¶ 25.

At all times relevant to the complaint, plaintiff suffered from an immunological disorder and was recognized by the Department as someone with a disability for purposes of the Rehabilitation Act. Am. Compl. ¶¶ 15–16. Since 2004, plaintiff has had a Class 2 or "Post Specific" medical clearance, which means she must get specific clearance from the Department's medical bureau before seeking assignment to a post.[1] *See* Email from Ernest Davis, M.D., Director of Medical Clearances, to Laurie Trost (Feb. 2, 2016) ("Dr. Davis Email"), Ex. 4 to Decl. of Trent Buatte, Ex. 2 to Def.'s Mot. [Dkt. # 20-2] ("Buatte Decl.") at ECF 96.[2]

---

1 According to the declaration of the Acting Principal Deputy Medical Director for the Department's Bureau of Medical Services, a post-specific clearance is also called a Class 2 medical clearance. Decl. of Larry G. Padget, Jr., Ex. 4 of Def.'s Mot. [Dkt. # 20-4] ("Padget Decl.") at 1. The Padget Declaration, while not incorporated in the complaint, is available for the Court's review in its analysis of plaintiff's standing to bring Count II. *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

2 "ECF" followed by a number refers to the page number appearing at the top of the PDF docketed on the Court's Electronic Case Files system.

To gain promotion to the senior ranks of the Foreign Service, the Department requires FSOs to serve in foreign posts considered "hardship posts" that have been assigned a certain "hardship differential." Am. Compl. ¶ 8. Department regulations define such a post as one in which "environmental conditions differ substantially from environmental conditions in the continental United States and warrant additional compensation as a recruitment and retention incentive." *Id.* ¶ 9, quoting 3 FAM 3261.1.[3] A hardship differential is the percentage difference between an FSO's basic rate of compensation and the increased rate the officer would earn while serving in a hardship post. *Id.* ¶ 10.

The American Foreign Service Association ("AFSA"), "the exclusive bargaining agent for Foreign Services employees, including FSOs," is involved in the process of establishing the required differentials. Am. Compl. ¶ 12. FSOs are responsible for meeting the hardship post requirement largely on their own. *Id.* ¶ 11. At the time of the complaint, the hardship post differential requirement was 15%. *Id.* ¶ 73. The Department's foreign posts with hardship differentials between 0% to 15% have a higher vacancy rate than posts with 20% or higher differentials. *Id.* ¶ 71.

Plaintiff alleges that in 2010, she requested assignment to three 15% or higher differential posts, but "DOS chose not to assign [her] to any hardship posts in 2010, or at any other time when [she] sought assignment to a post with a sufficiently high hardship differential for promotion to the SFS." Am. Compl. ¶¶ 21–22.

---

3 "FAM" refers to the Department of State's Foreign Affairs Manual. U.S. DEP'T OF STATE, FOREIGN AFFAIRS MANUAL AND HANDBOOK, https://fam.state.gov/default.aspx (last visited Mar. 17, 2020). *See Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S.Ct. 2076, 2082 (2015).

In 2014, plaintiff was selected to serve as Minister Counselor of the Public Affairs Section of Embassy Tokyo, a position that was two grade ranks higher than her personal rank.[4] Am. Compl. ¶¶ 23–24, 26. Plaintiff received positive performance reviews for her work there, as well as a meritorious service pay increase for being one of the Department's "best assets." *Id.* ¶¶ 29–31. In her 2015 performance evaluation, plaintiff's evaluator stated: "I agree that [plaintiff] belongs in the ranks of our most senior leaders and should be promoted to Senior Foreign Service."[5] *Id.* ¶ 29.

In early 2015, plaintiff asked her Career Development Officer ("CDO") to begin the process that would enable her to be considered for promotion to the SFS. Am. Compl. ¶ 32. She was informed "that she met all requirements for promotional eligibility to the SFS other than the then-current hardship post requirement, and only that requirement, for promotion to the SFS." *Id.* ¶ 33.

On October 9, 2015, plaintiff wrote to the Director General of the Foreign Service "requesting a waiver of the hardship post requirement for entry to the SFS." Am. Compl. ¶ 39. The Director General responded by telling plaintiff that she was required to fulfill the hardship post requirement. *Id.* ¶ 40.

---

4 According to the Padget Declaration, "[a]ll employees . . . holding a Class 2 Post-specific clearance require post approval from MED/MC prior to being assigned to any overseas post," Padget Decl. ¶ 7, and the "only post submitted [by plaintiff] for approval was Tokyo. MED has no record of any other post approval requests for Ms. Carrington, and [MED's] records do not indicate she sought approval for any 15% hardship post." *Id.* ¶ 10.

5 In plaintiff's 2016 review, the deputy chief of mission stated that "[i]f she were in the senior ranks, where she clearly belongs, [her] achievements would warrant merit pay. I urge the panels to promote her without delay." Am. Compl. ¶ 30.

On January 15, 2016, plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint based on the denial of the waiver request. *See* Am. Compl. ¶ 105. She then worked with her CDO to request another waiver of the hardship post requirement from the Director General. *Id.* ¶ 42. As part of that process, on January 29, 2016, plaintiff emailed Dr. Ernest Davis, the Director of Medical Clearances, seeking information that would aid her CDO in completing the request. *See* Dr. Davis Email at ECF 97.[6] Among other questions, plaintiff asked for "more details about why [plaintiff's] family is not likely to be cleared to serve at a 15% differential post . . . ." *Id.* On February 2, 2016, Dr. Davis responded: "Ms. Carrington and two of her eligible family members have medical issues that severely limit assignment of the employee and her Eligible Family Members to posts without sophisticated, near CONUS [Continental United States] equivalent, medical resources. The required medical resources would not be available in hardship posts." Dr. Davis Email at ECF 96.

In March 2016, plaintiff requested a waiver of the hardship post requirement as a form of reasonable accommodation from the Disability and Reasonable Accommodation Division in the State Department's Office of Accessibility and Accommodation ("DRAD"). Am. Compl. ¶ 46. On April 1, 2016, that office responded that "a [hardship post requirement] waiver is not considered a reasonable accommodation, therefore, while we can certainly communicate with you, as needed, but there is no need for you to provide us with a [] Request for Disability [accommodation form]." *Id.* ¶ 47. On April 12, 2016, plaintiff's CDO confirmed that the Department's policy is that "waivers [of the hardship post requirement for promotion to the SFS]

---

6 While Dr. Davis's opinion is quoted in the amended complaint and, therefore, is incorporated into it, *see* n.1 *supra*, plaintiff's email to Dr. Davis is not specifically referenced in the complaint, and it is used solely in connection to the Court's standing analysis in Count II.

are not reasonable accommodations so do not follow under DRAD's authority to weigh in on." *Id.* ¶ 48 (correction in original).

Around this time, plaintiff submitted her second waiver request to the Director General. Am. Compl. ¶¶ 43–44.[7] In it, plaintiff stated that:

- she had "not been able to meet the hardship requirement due to a medical condition that requires access to advanced medical care by a number of different medical specialists[;]"

- two of her children have special medical needs;

- she bid on several 15% differential posts in 2010 and her "understanding was that the StateMED clearance process did not come into play as [she] was not offered any of those overseas positions[;]" and

- by 2014, there had been "a degree of improvement in [her] health and in [her] children's conditions [that] allowed [them] to return overseas with Tokyo-specific medical clearances based on the availability of high quality services [t]here."

*Id.* ¶ 43.

On April 22, 2016, the Director General responded to plaintiff's second request. Am. Compl. ¶ 45. He noted that "[w]hen reviewing waiver requests . . . consideration is given to when the employee's medical clearance became limited and whether the employee made reasonable efforts to seek assignment at a qualifying differential post before the employee's medical clearance became limited, as well as afterward." Ex. 5 to Buatte Decl. [Dkt. # 20-2] ("DG Response") at ECF 118.[8] He added, "[a]t this point, I have determined that you have not met the standard required to 'open your window,'" and he directed plaintiff to "please request that MED evaluate

7 Plaintiff does not specify exactly when she submitted the request, so it is not clear if it was submitted before or after she received the information regarding DRAD.

8 The amended complaint quotes the DG Response, *see* Am. Compl. ¶ 45, so the response is incorporated by reference into the complaint.

possible posts for a post-specific clearance." *Id*. Finally, he advised the plaintiff: "[i]f MED is not able to clear you for any 15 percent differential posts at that point, you may wish to request consideration of a waiver." *Id*.; Am. Compl. ¶ 45.

On May 3, 2016, plaintiff submitted a request to the Department's EEO specialist in the Office of Civil Rights: "that StateMed be directed to assist me beginning now to identify hardship posts at the 15% differential rate that would provide the 'near CONUS equivalent' medical facilities that my condition requires, as well as adequate support services for my spouse and my daughter given their disabilities." Am. Compl. ¶ 49. She also asked that if a 15% post could not be identified, that she be granted a waiver because "the DG's assumption appears to be that such postings in fact exist when StateMed and others have advised me that is not the case." *Id*. Plaintiff did not receive a response to this submission. *Id*. at 50.

## II. Procedural Background

On April 13, 2018, plaintiff filed the initial complaint in this matter. Compl. [Dkt. # 1]. On December 14, 2018, plaintiff filed the amended complaint, Am. Compl., and on March 12, 2019, defendant filed a motion to dismiss or in the alternative for summary judgment. Def.'s Mot.; Def.'s Mem. Plaintiff then filed an opposition [Dkt. # 22] ("Pl.'s Opp."), and defendant replied. Def.'s Reply [Dkt. # 25].

# STANDARD OF REVIEW

## I. Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*,

363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**II. Failure to State a Claim**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[,]" *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Plaintiff asserts three claims under the Rehabilitation Act in the amended complaint. In Count I, she alleges that the Department violated the Act by deeming her and other disabled FSOs to be ineligible for promotion to the SFS without consideration of reasonable accommodations. Am. Compl. ¶ 121. In Count II, plaintiff alleges that the Department's "inflexible" hardship post requirement has a disparate impact on disabled FSOs because it disproportionately delays or excludes them from being promoted to the SFS. *Id.* ¶ 137. Finally, in Count III, plaintiff alleges that the Department intentionally implemented its hardship post requirement to exclude or delay her promotion, and the promotion of other disabled FSOs, to the SFS. *Id.* ¶¶ 148–50. Defendant has moved to dismiss all three counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* Def.'s Mem. In addition, defendant argues that Count II should be dismissed because plaintiff lacks standing to bring the disparate impact claim. *Id.* at 17. Defendant's motion to dismiss Count One will be granted and Counts Two and Three will be dismissed without prejudice.

### I. Count I will be dismissed because plaintiff has not plausibly alleged that she was denied a reasonable accommodation.

Count I alleges that the Department violated the Rehabilitation Act when it determined that plaintiff was ineligible for promotion without considering a reasonable accommodation, and it is brought on behalf of a putative class of disabled FSOs as well.[9] Am. Compl. ¶ 121. Defendant moves to dismiss the count for failure to state a claim on the ground that plaintiff has failed to plead that her request for a reasonable accommodation was "denied." Def.'s Mem. at 10–13.

9 Defendant correctly points out that plaintiff does not state what reasonable accommodation she was allegedly denied. Def.'s Mem. at 9–10. However, the Court proceeds, as defendant did, under the assumption she is referring to her request for a waiver of the hardship post requirement.

The Rehabilitation Act requires that an agency must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the agency] can demonstrate that the accommodation would impose an undue hardship. . . ." 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a); *see also Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993) ("[The Act's] basic tenet is that the Government must take reasonable affirmative steps to accommodate the [disabled], except where undue hardship would result.").

A plaintiff asserting a failure to accommodate claim must plausibly allege facts to establish four elements: "(i) she was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014) (internal citations omitted); *Doak v. Johnson*, 798 F.3d 1096, 1105 (D.C. Cir. 2015). "An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999).

Here, the fourth element is missing because plaintiff has failed to allege that a request was denied. Assuming that a waiver of the hardship post requirement is a reasonable accommodation,[10] plaintiff did not complete the steps required to obtain a waiver. In the Director General's response to plaintiff's second waiver request, he told her that she had "not met the standard required to 'open

10 The complaint alleges that the Department has taken a position that a hardship post waiver is not a reasonable accommodation, but the Court need to reach that issue in this case because plaintiff's request has not yet been denied. *See* Am. Compl. ¶¶ 47, 48.

[the] window'" to be considered for promotion to the SFS and directed her to "request that MED evaluate possible posts for a post-specific clearance" when she bid on her next post. DG Response at ECF 118. He said that if she could not receive a post-specific clearance, she could *then* "request consideration of a waiver." *Id.*; Am. Compl. ¶ 45. In other words, the Director General advised plaintiff that she did not yet meet the criteria for requesting a waiver, but told her what to do to qualify: seek post-specific clearance. This does not constitute a denial of a reasonable accommodation request; indeed, the Director General left open the possibility that he would consider a request for a waiver if it was needed in the future.

Furthermore, plaintiff does not adduce any facts suggesting that she followed the Director General's directions. She does not assert that she bid on another post or asked MED to evaluate possible options. Nor does she allege that she sought post-specific clearance or that she ever reapplied for a waiver after being denied such a clearance. Plaintiff notes that she provided those considering her January 15, 2016 EEO complaint with additional demands for relief, including a request for a MED evaluation for post-specific clearance, but simply adding information or possible remedies to her employment action did not accomplish any of the steps she was told were necessary.

Because plaintiff has failed to plead sufficient facts to plausibly allege that her request for accommodation was denied, Count I will be dismissed for failure to state a claim.[11]

11 Defendant also seeks to dismiss Count I on the ground that plaintiff's request was unreasonable as a matter of law because it sought an exception to the Department's "procedural precepts" regarding promotion. Def.'s Mem. at 10, 15. But because the Court will dismiss Count I based on defendant's first argument, it does not need to reach that issue.

## II. Count II will be dismissed because plaintiff has failed to state a claim that the Department's hardship post requirement has a disparate impact on disabled FSOs.

In Count II, plaintiff alleges that she has been subjected to a policy that has a negative and disproportionate impact on disabled officers in the Foreign Service. Defendant moves to dismiss this disparate impact claim on two grounds. First, defendant contends that plaintiff lacks standing to bring the claim and, therefore, it should be dismissed for lack of subject matter jurisdiction. Def.'s Mem. at 17. Second, defendant argues that even if plaintiff has standing, the claim should be dismissed because it fails to state a claim for disparate impact. *Id*. at 18. While the Court finds that plaintiff has standing to bring the claim, it will dismiss Count II because plaintiff fails to plead facts giving rise to an inference that the Department's hardship post policy has a disproportionately adverse effect on disabled FSOs.

### A. Plaintiff has standing to bring her disparate impact claim.

"To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Because "standing is a necessary predicate to any exercise of [federal] jurisdiction . . . if it is lacking, then the dispute is not a proper case or controversy," and the court does not have subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012) (internal citation and quotation marks omitted).

To determine constitutional standing, the Court looks to the face of the complaint. *Haase*, 835 F.2d at 908. To comply with the Article III standing requirements, a plaintiff must show that: "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). "The party invoking federal jurisdiction bears the burden of establishing standing," *Lujan*, 504 U.S. at 561, and when reviewing a standing claim, the Court must be "careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiff[] would be successful in [her] claims." *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008), quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003). Defendant argues that plaintiff lacks standing because she has failed to plead facts to support step two of the standing analysis: the causal link between her claimed injury and the challenged action by the Department. Def.'s Mem. at 16.

Plaintiff has alleged facts showing that her failure to gain promotion to the SFS is "fairly traceable" to the Department's hardship post requirement. The complaint alleges that plaintiff's CDO, who is charged with helping FSOs gain promotion to the SFS, advised plaintiff that she had satisfied all of the requirements to be promoted other than the obligation to serve in a hardship post. Am. Compl. ¶ 33. The accolades plaintiff received in her reviews, including her supervisors' statements that plaintiff belonged in the Senior Foreign Service support an inference that she was otherwise eligible for promotion. Am. Compl. ¶¶ 29–31. Furthermore, plaintiff alleges specifically that she was unable to meet the hardship post requirement because of her medical condition and the Department's lack of flexibility in waiving the requirement. She quotes Dr. Davis's opinion that due to her medical condition, she would be unable to serve in a hardship post because "[t]he required medical resources would not be available" in such a post. Am. Compl. ¶ 41; Dr. Davis Email at ECF 96.

These facts are sufficient to plausibly allege that plaintiff's failure to gain promotion to the SFS is fairly traceable to the Department's hardship post requirement and that plaintiff has standing to bring Count 2.

**B. Plaintiff fails to state a claim for disparate impact.**

"[A] disparate-impact claim challenges practices that have a 'disproportionately adverse effect on [protected groups],'" that are "otherwise unjustified by a legitimate rationale." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S.Ct. 2507, 2513 (2015), quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).[12] "[T]o sustain a disparate impact claim, a 'plaintiff must generally demonstrate with statistical evidence that [an employer's] practice or policy has an adverse effect on the protected group.'" *Jianqing Wu v. Special Counsel*, No. 14-7159, 2015 WL 10761295, at *1 (D.C. Cir. Dec. 22, 2015), quoting *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1985–86 (D.C. Cir. 2011).

Here, plaintiff alleges that the Department's hardship post requirement has a disproportionately adverse effect on disabled FSOs by delaying or preventing their promotions to the senior ranks of the Foreign Service. Am. Compl. ¶ 137. Defendant contends that plaintiff has failed to make out a cognizable claim for disparate impact because she does not allege that there is an "observed statistical disparity" between promotion rates of disabled FSOs and non-disabled FSOs. Def.'s Mem. at 18. The Court agrees.

---

12 Although the Supreme Court has not directly addressed the issue of whether a plaintiff may seek relief for a claim based on a disparate impact theory brought under the Rehabilitation Act, it has held that disparate impact is available under the American with Disabilities Act of 1990, *see Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003), and the Rehabilitation Act "directs courts to employ the standards of the Americans with Disabilities Act." *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014).

The amended complaint does not include a single statistic or other factual information regarding the effect of the hardship post requirement on the promotion rates of disabled FSOs. Although plaintiff provides some statistics on the vacancy rates of hardship posts, *see* Am. Compl. ¶ 71, that information sheds no light on how those spots are filled generally or by disabled FSOs specifically. As set forth in the complaint, plaintiff's claim appears to be based entirely on her own promotion experience, coupled with a conclusory allegation that, "[u]pon information and belief," the hardship post requirement disproportionately excludes all disabled FSOs from promotion. *Id*. ¶ 65. This does not satisfy plaintiff's obligation to allege at least some factual information to support a plausible inference that the Department's neutral hardship post requirement has a disproporate adverse effect on disabled FSOs. *See Greater New Orleans Fair Hous. Action Ctr.*, 639 F.3d at 1985–86. For that reason, Claim II will be dismissed, but without prejudice.

**III. Count III will be dismissed because plaintiff has failed to plausibly allege that the Department intentionally discriminated against her and other disabled FSOs by implementing its hardship post requirement.**

While Count II alleged that the hardship post requirement, while neutral on its face, violates the laws protecting disabled individuals in the workplace because it disproportionately impedes their promotion, Count III alleges that it was deliberately designed to have this effect, and is illegal for this reason. Defendant has also moved to dismiss this disparate treatment count on the grounds that plaintiff "has failed to plead any facts that could support the inference that the adoption of this requirement in 2005 . . . was motivated by intentional discrimination towards disabled

employees. . . ." Def.'s Reply at 10–11.[13] Plaintiff asserts that the Department "adopted an inflexible hardship post policy intentionally to exclude FSOs with disabilities from promotion to the Senior Foreign Service." Pl.'s Opp. at 11. But defendant points out that plaintiff failed to plead any facts that would support an inference that the Department intended to exclude disabled FSOs from the Senior Foreign Service by adopting the hardship post requirement, or that plaintiff herself was the victim of such an intentionally discriminatory policy. Def.'s Reply at 10–11.

To state a claim for intentional discrimination – often referred to as a "disparate treatment" claim – a plaintiff must allege that she (1) had a disability, (2) was qualified for the position with or without reasonable accommodation, and (3) suffered an adverse action because of her disability. *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 154 (D.D.C. 2013), citing *Duncan v. Wash.*

---

13 Count Three is poorly drafted and vague, which is why defendant states, "[a]s a threshold matter," in its motion to dismiss: "[t]o the extent that Count III simply reiterates [plaintiff's] claim for an alleged failure to accommodate, it should be dismissed for reasons already addressed above with respect to Count I . . . ." Def.'s Mem. at 20–21. One can read the claim to suggest, though, that it was the hardship post requirement that caused plaintiff to lose advancement opportunities, and its implementation resulted in discrimination against her as a person with a disability because people in that class were deemed ineligible for hardship posts without consideration of reasonable accommodations. That is different than alleging discrimination on the specific occasion when the agency allegedly denied a request for a waiver.

Defendant's motion contends that even this sort of disparate treatment allegation would fail: the count appears to be based, as is Count Two, on the mere existence of a facially neutral policy. Def.'s Mem. at 21. Defendant argues, pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), that in a discrimination claim – *i.e.*, a "you treated me differently" claim – plaintiff has to establish that defendant's identification of a legitimate, non-discriminatory policy as the reason for her non-advancement was pretextual, and that defendant's real motivation was to exclude people with disabilities. *Id*. But that is the summary judgment standard, not the pleading standard at this stage.

The motion to dismiss can also be read to be arguing that the claim fails because plaintiff has not alleged that her employer treated her less favorably than other *because of* her protected class, but does not come out and say that very clearly.

However, plaintiff opposed the motion to dismiss and clarified that her disparate treatment claim was meant to allege that the Department adopted the "inflexible" hardship post policy intentionally to exclude disabled individuals from promotion. Pl.'s Opp. at 11. Therefore, it is this claim that the Court will address in this opinion.

*Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc); *accord Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 308 (D.D.C. 2015); *Perez v. D.C. Dep't of Employment Servs.*, 305 F. Supp. 3d 51, 57 (D.D.C. 2018).[14] In other words, plaintiff must plead that her employer intentionally discriminated against her because of her disability, resulting in an adverse employment action.

Here, the complaint advances the conclusion that plaintiff and and other disabled FSOs suffered adverse employment actions – the denial of promotions to the SFS – because of their disabilities due to the Department's adoption of the "inflexible" hardship post policy. Am. Compl. ¶ 150; Pl.'s Opp. at 11. But the complaint lacks the necessary factual allegations that make this conclusion plausible.

Plaintiff specifically alleges that the hardship post requirement was adopted by the Department after negotiations with the Foreign Service Employees' union, AFSA, Am. Compl. ¶ 12, but does not allege that the Department expressed any discriminatory animus during that process, or that any potential discriminatory effects on disabled FSOs were deliberately overlooked. Instead, what plaintiff alleges is that there was a concern that there were not enough hardship posts available to satisfy the demand of *all* FSOs rising through the ranks who would seek promotion. *See id.* ¶ 72. Plaintiff alleges that the Department's "shifting explanations" for its hardship post requirement do not justify the policy, which "screens out or tends to screen out FSOs with disabilities from promotion to the SFS." *Id.* ¶ 77. But, as previously noted, there are

14 To the extent some of these cases discuss disparate treatment claims under the Americans with Disabilities Act ("ADA"), the analysis nonetheless applies because "[t]he Rehabilitation Act, which prohibits disability-based discrimination in federal employment, is to be interpreted coterminously with the ADA." *Dave v. Lanier*, 681 F. Supp. 2d 68, 73 n.4 (D.D.C. 2010), citing *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008); *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002).

no statistics set forth to lend support to that claimed effect, and there are no other facts alleged to support the claim that the policy was intentionally adopted to impede disabled FSOs from advancing through the ranks. These summary allegations, standing alone, are insufficient to state a claim of intentional discrimination.

Moreover, plaintiff alleges that she failed to gain promotion to the SFS in October 2015, because she had not served in a 15% differential post. *See* Am. Compl. ¶¶ 39–40. But both parties acknowledge that the hardship post requirement applies equally to all FSOs, Am. Compl. ¶ 8; Def.'s Reply at 10, and plaintiff has not alleged any facts that raise an inference that *her* failure to gain promotion at that time was motived by discriminatory bias.

Because plaintiff has failed to state facts to plausibly allege that the Department intentionally adopted its hardship post requirement to discriminate against disabled FSOs or that application of the requirement to her own bid for promotion was the result of intentional discrimination, plaintiff has failed to state a claim for disparate treatment. Therefore, Count III will also be dismissed, but without prejudice.

**CONCLUSION**

For the foregoing reasons, Count I is dismissed with prejudice and Counts II and III are dismissed without prejudice. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 20, 2020